**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
William E. Camy, SBN 291397
2180 Harvard Street, Suite 500
Sacramento, CA 95815
TEL: 916.929.1481
FAX: 916.927.3706
wcamy@porterscott.com

Attorney for Defendants, THE COUNTY OF NAPA, JOSEPH CHERRY, INDIVIDUALLY, AND REBECCA BROCKMAN
*Exempt from filing fee pursuant to Government Code section 6103*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF LEON SCHMIDT, through CO-ADMINISTRATORS GARY SCHMIDT and CAROL ADAMS, GARY SCHMIDT, an individual, CAROL ADAMS, an individual, AND SHERI FIHN, an individual., <br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF AMERICAN CANYON, THE COUNTY OF NAPA, JOSEPH CHERRY, individually, and REBECCA BROCKMAN, individually, and DOES 2-25, inclusive,<br><br>Defendants.<br>_____/ | Case No.: 3:25-cv-06731-MMC<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS THE COUNTY OF NAPA, JOSEPH CHERRY, INDIVIDUALLY, AND REBECCA BROCKMAN'S MOTION TO DISMISS PLAINTIFFS THE ESTATE OF LEON SCHMIDT, THROUGH CO-ADMINISTRATORS GARY SCHMIDT AND CAROL ADAMS, GARY SCHMIDT, AN INDIVIDUAL, CAROL ADAMS, AN INDIVIDUAL, AND SHERI FIHN, AN INDIVIDUAL'S COMPLAINT**<br><br>Date: January 23, 2026<br>Time: 9:00 am<br>Courtroom 7 – 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Compl. Filed: 8/8/2025<br>Trial Date: Not Set |

Defendants THE COUNTY OF NAPA, JOSEPH CHERRY, INDIVIDUALLY, AND REBECCA BROCKMAN ("County Defendants") hereby respectfully requests that this Court take judicial notice of the following pursuant to the Federal Rules of Evidence, Rule 201, all in support of Defendants' Motion to Dismiss Plaintiffs' Complaint.

1. Statement of Decision and Order, *In the Matter of the Conservatorship of the Estate of: Leon Schmidt aka Lee Schmidt*, Napa County Superior Court Case No. 23PR000161, attached hereto as **Exhibit A**.

Dated:   December 16, 2025

PORTER SCOTT
A PROFESSIONAL CORPORATION

By:   */s/ William E. Camy*
William E. Camy
Attorney for Defendant THE COUNTY OF NAPA, JOSEPH CHERRY, INDIVIDUALLY, AND REBECCA BROCKMAN

# EXHIBIT A

```
SHERYL L. BRATTON, County Counsel
  State Bar No. 144209
SUSAN B. ALTMAN, Deputy
  State Bar No. 230227
NAPA COUNTY COUNSEL
1195 Third Street, Suite 301
Napa, California 94559-3035
Telephone: (707) 253-4521
```

Attorneys for Conservator

SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA

In the Matter of the Conservatorship of the Estate of:

**LEON SCHMIDT aka LEE SCHMIDT,**

Conservatee

Case No: 23PR000161

**ORDER AFTER HEARING**

Date: May 6, 2025
Dept: Dept. A
Time: 10:00 a.m.

This matter came on for approval of the Public Guardian's Amended First and Final Accounting filed with the Court on November 1, 2024. Conservatee Mr. Leon Schmidt's siblings, Gary Schmidt, Carol Adams and Sheri Fihn objected to the accounting. After two lengthy continuances, the matter came on for hearing on March 13, 2025, April 18, 2025, April 28, 2025, and April 30, 2025. Susan Altman represented the Public Guardian's office. Mr. Gary Schmidt, Carol Adams, and Ms. Fihn appeared in pro per. Cynthia Kairys appeared on behalf of the Public Defender's Office. Following the hearing, the Court took the matter under submission and now rules as follows:

**BACKGROUND/APPLICABLE LAW**

Following the first year of a conservatorship and at least every other year thereafter, the Conservator of an Estate must present an accounting for approval by the Court. PC 2620(a). Here, the Conservator seeks approval of the accountings for the periods 7/20/23-6/29/24 and 6/30/24-8/27/24. In addition to approval of the accounting, the Public Guardian seeks statutory compensation of $11,514.37, $385 in attorneys' fees and a bond fee of $1,475.28 as well as $300 reimbursement to the Court investigator. Once approved, the remaining funds will be distributed to Mr. Leon Schmidt's The

1  Conservator has burden of proof to prove the accuracy of the accounting. Mr. Schmidt, Ms. Adams, and
2  Ms. Fihn object to the accounting on multiple grounds. These include (1) failing to give them notice of
3  the Conservatorship Petition as required by PC 1822(a), (2) establishing the Conservatorship
4  fraudulently, (3) taking over and liquidating the TD Ameritrade account, (4) failing to marshal Mr. Leon
5  Schmidt's Lake County property so it could be part of the conservatorship estate, (5) allowing Mr. Leon
6  Schmidt's "care credit" to lapse and be cancelled, (6) using a simplified accounting rather than standard
7  accounting, (7) failing to include back-up documentation with the accounting, and (8) lack of clarity of
8  the accounting.
9        A Conservator of the estate must use ordinary care and diligence in managing the estate. "What
10 constitutes use of ordinary care and diligence is determined by all the circumstances of the particular
11 estate." PC 2401; CRC 7.1059. Stated differently, a conservator must exercise his or her duties in good
12 faith with reasonable prudence, discretion, and intelligence. If a Conservator breaches his fiduciary duty,
13 the Court may order him surcharged for: (1) Any loss or depreciation in value of the Conservatee's estate
14 resulting from the breach of duty, with interest; (2) Any profit made by the Conservator through the
15 breach of duty, with interest; and (3) Any profit that would have accrued to the Conservatee's estate if
16 the loss of profit is the result of the breach of duty. The Court may decline to order surcharge if the
17 Conservator acted reasonably and in good faith and it would be equitable to decline to surcharge. PC
18 2401.3 (b).The Court received Exhibits A-E into evidence and took judicial notice of the Court file in
19 this matter. Evid. Code 452.

### FINDINGS OF FACT

21       Mr. Leon Schmidt was born in 1939, the oldest brother to his four siblings, Gary, Steve, Sheri,
22 and Carol. He had a degree in accounting and for some time worked for IBM in computer programming.
23 For 55 years, he owned a wholesale stationery store. By all accounts, Mr. Leon Schmidt was smart,
24 fiercely independent and a good businessman. Approximately, 10 years ago, Mr. Leon Schmidt suffered
25 a near fatal heart attack while running. He was in a coma for two to three weeks and since that time, his
26 mental state had never been the same.
27       Mr. Leon Schmidt lived on a 1.2-acre property in American Canyon with his brother Steve. Mr.
28 Leon Schmidt loved his dogs - and told many of the witnesses at trial that he would rather spend his

money on his dogs, than himself. In addition to his dogs, Mr. Leon Schmidt was passionate about buying and selling stock via his TC Ameritrade Account - so much so that he borrowed, on margin, approx. 200K against his account. He also engaged in option trading. Mr. Leon Schmidt maintained a close relationship with his siblings - although they all lived out of town, with Mr. Gary Schmidt living in Virginia City, NV, Ms. Adams living in San Jose and Ms. Fihn living in Vista. Ms. Adams and Ms. Fihn spoke with Mr. Leon Schmidt weekly and Mr. Gary Schmidt monthly. As an experienced cardiac care nurse, Ms. Fihn helped Mr. Leon Schmidt with his medical care. None of the siblings knew the details of Mr. Leon Schmidt's financial situation and all agreed that Mr. Leon Schmidt was proud, would not take money from them (except as a loan) and did not want them to know about his dire financial situation.

Tragically, in April 2021, Mr. Leon Schmidt's home burned down, and his brother was killed in the fire. Despite the fact that Mr. Leon Schmidt's insurance company would pay for a rental home for up to 12 months, Mr. Leon Schmidt did not want to leave his property and remained there, with his beloved dogs, living in his car without water, electricity or sewer. Nor did Mr. Leon Schmidt want to live with his siblings, even though all three of them offered for him to live in their homes or in properties they owned. At one point, the siblings spoke about a conservatorship to help Mr. Leon Schmidt with his problems related to his property and the City of American Canyon, but they did not follow through with that.

The Public Guardian first learned of Mr. Leon Schmidt in summer of 2022, when the City of American Canyon called Adult Protective Services (APS), with concerns related to his living situation. APS contacted Mr. Leon Schmidt and tried to give him support. From his conversations with APS, Mr. Cherry was under the impression that APS had contacted Mr. Leon Schmidt's family as well - but apparently that was not the case. The City of American Canyon contacted Mr. Cherry again in March 2023 because of a big judgment against Mr. Leon Schmidt and worried if they foreclosed or got a receiver Mr. Leon Schmidt would have nowhere to go. Mr. Cherry spoke with City attorney, code enforcement, Mr. Leon Schmidt, Juan Martinez and Brad Terrill. Mr. Cherry spoke with Mr. Leon Schmidt March, April, and May, 2023. By mid-June Mr. Leon Schmidt agreed to have Public Guardian be conservator of estate to help him with The City of American Canyon and 888-Abatement Judgment.

///

1  The goal of the Conservatorship was to save Mr. Leon Schmidt's home from receivership and
2  foreclosure.
3        Although many of the Conservatorship of Person boxes were checked on the Petition and in
4  other court-filed documents, the Public Guardian never planned to seek a Conservatorship of the Person
5  because Mr. Leon Schmidt's physicians stated he had capacity to make his own health care decisions.
6  On July 20, 2023, this Court appointed the Public Guardian as Conservator of Mr. Leon Schmidt's
7  estate. Mr. Leon Schmidt appeared, by Zoom, at the hearing with his Court appointed attorney. At the
8  hearing, Mr. Leon Schmidt agreed to the Conservatorship. It is undisputed that the Public Guardian did
9  not give notice of the hearing to Mr. Leon Schmidt's siblings and that all three of them would have
10  attended the hearing had they known of it.
11        On October 18, 2023, the Public Guardian first learned of the TD Ameritrade Account.
12  On 12/28/23, the Public Guardian gained control of account and seven days later, on January 4, 2024,
13  the Public Guardian sold the TD Ameritrade account. Mr. Leon Schmidt was not happy when the Public
14  Guardian closed his Bank of the West account and especially after it took control of the TD Ameritrade
15  account. Nor was he pleased that he had to ask for money each month - "he felt like a 12-year-old." Over
16  time, Mr. Leon Schmidt complained to many of the witnesses about the Conservatorship and his lack of
17  financial independence. Apparently, Mr. Leon Schmidt was telling people that he thought the
18  Conservatorship meant the County would provide him a free lawyer to sue the City of American Canyon
19  and that he did not understand the Public Guardian would take over his financial situation in its entirety.
20        At the same time, during the Spring of 2024, even though they were not the Conservator of Mr.
21  Leon Schmidt's person, the Public Guardian was working with Mr. Leon Schmidt to find a place for him
22  to live. Although Mr. Leon Schmidt rejected a number of options, he had expressed a willingness to
23  consider an apartment complex where a friend lived and he could keep his dogs, shortly before he
24  passed away. Mr. Leon Schmidt also agreed that the 888-Abatement debt was a priority to resolve. He
25  worked with Mr. Cherry to settle the debt, which ultimately resulted in an agreement to pay $5,000 per
26  month until it was paid off. Mr. Leon Schmidt did not want to pay off his debt to American Canyon.
27  Mr. Leon Schmidt passed away on 6/29/24. The Amended First and Final Accounting followed.
28  ///

ORDER AFTER HEARING SETTLING SECOND AMENDED ACCOUNTING - 4

## FAILURE TO NOTIFY SIBLINGS

PC 1822(a) requires the Public Guardian to notify the siblings of the Petition. The Public Guardian admits that it failed to do so. Section 1822 provides no sanction or other remedy for the failure, so the Court considers whether the failure to notify is a breach of the Public Guardian's fiduciary duty. Under the facts presented and in light of the totality of the circumstances, the Court finds no breach of fiduciary duty and waives the requirement to notify Mr. Schmidt's siblings. The evidence in support of the Court's conclusion is:

1. The Petition, Citation, Notice of Hearing and Confidential Supplemental Information were personally served on Mr. Schmidt on June 22, 2023 by Rebecca Brockman.

2. The 7/14/23 Investigator's Report indicates that Mr. Schmidt agreed to the conservatorship and wanted Mr. Cherry to help him. Moreover, Mr. Schmidt's friend, Bradley Terrill was present at the interview and agreed that the conservatorship of the estate would be a good idea as Mr. Schmidt needs help with his property.

3. Mr. Schmidt asked Mr. Cherry not to notify his family.

4. It is important for Mr. Cherry to build rapport with his clients.

5. Mr. Leon Schmidt did not want his family to know about the judgments against him. He was embarrassed and humiliated by his financial circumstances.

6. Mr. Schmidt had capacity to make decisions about his person.

7. On July 20, 2023, Mr. Leon Schmidt appeared in Court with his attorney, Michael Lernhart. At the hearing, Mr. Leon Schmidt did not object to the conservatorship and the Court put the conservatorship in place.

8. Moreover, Ms. Fihn and Ms. Adams each testified, unequivocally that Mr. Leon Schmidt would not want them to handle his finances. Mr. Gary Schmidt testified that he thinks Mr. Leon Schmidt would have accepted him as conservator but then stated that Mr. Leon Schmidt would have strenuously objected to anyone being conservator.

The siblings have made no showing that, given the evidence and information that was provided to the Court, including the information regarding Mr. Schmidt's living situation and the liens on his property and risk of losing his property because of those liens, that the Court would have done anything

differently, even assuming that his siblings had been noticed and had appeared at the initial Court hearing. Clearly, Mr. Leon Schmidt needed significant help with his finances - particularly with respect to his American Canyon property. Understandably, Mr. Leon Schmidt was upset that he no longer had control over his financial situation. While the Public Guardian may not handle too many Conservatorships of the Estate (only), only, the Court has a number of them before it. In all of those Conservatorships, the conservatee is frustrated and angry by his or her lack of control over their financial situation. Yet those individuals, just like Leon, are unable to manage their finances. Some resist the conservatorship altogether; others agree at first and then don't like it and insist they don't need it once it's in place. Here, the Court is confident that Mr. Leon Schmidt needed a conservatorship of the estate to help him keep the City of American Canyon at bay and resolve the issue with 888-Abatement.

## FRAUDULENT CONSERVATORSHIP

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."; *Lazar v. Superior Court*, 1996 12 Cal. 4th 631, 638. Despite Mr. Gary Schmidt's argument to the contrary, there was no evidence from which the Court could conclude that the Public Guardian somehow defrauded Mr. Leon Schmidt into the Conservatorship.

## ISSUES WITH TD AMERITRADE ACCOUNT

At least initially, the siblings took issue with the Public Guardian's liquidation of the TD Ameritrade Account. Yet the Public Guardian, as conservator of Mr. Leon Schmidt's estate, had little option but to liquidate the account. CRC 7.1059 (b) requires the conservator of the estate to (1) Provide competent management of the conservatee's property, with the care of a prudent person dealing with someone else's property; (2) Refrain from unreasonably risky investments; (3) Manage the estate for the benefit of the conservatee.

Here, Mr. Leon Schmidt had approximately $100,000 in his stock portfolio securing an approximate $200,000 margin loan. Mr. Leon Schmidt traded in options and engaged in some short-term, "day trading." Had the Public Guardian held onto this account - and/or continued to let Mr. Leon Schmidt control it, it would have clearly breached its fiduciary duty. Furthermore, Mr. Cherry testified,

and all the evidence at trial support his testimony on this point, that Mr. Leon Schmidt's monthly social security payments were insufficient to take care of his obligations - even as streamlined as they were in light of his living situation. Mr. Leon Schmidt agreed that the priority was to resolve the issue with 888-Abatement and approved the plan to pay them $5,000 per month. The only way to do this in the short term was to sell the TD Ameritrade Account. Moreover, the Public Guardian had been working with Mr. Leon Schmidt to find an apartment or house to move into - and Mr. Leon Schmidt appeared receptive to this idea. This would necessarily increase Mr. Leon Schmidt's monthly expenses.

## FAILURE TO TAKE CONTROL OF THE LAKE COUNTY ASSET

Rebecca Brockman testified she learned of the Lake County property in August 2023 and would have shared that information with Mr. Cherry and Molly Robert. She also learned of a "partnership" with Brad Terrill - although not about any details. She did not see any documentation regarding either asset. Ms. Brockman acknowledged that it is important to Marshal all of a conservatee's assets and explained they delay by noting there was a lot going on with Mr. Leon Schmidt - present, everyday issues, i.e., he had missed his last 7 cardiology appts, was living in and driving his car, which was uninsured and unregistered - and those issues were her immediate focus.

When asked about the Lake County property, Mr. Cherry first testified he did not know about it and whether it was owned, in whole or in part by Mr. Leon Schmidt. He admitted he did not run a property report for property outside of Napa County, at the commencement of the Conservatorship. He then testified he did not see any documentation regarding the Lake County property. He testified had he known about the property, he would have marshaled it.

Together, Mr. Cherry and Ms. Brockman's testimony leads the Court to conclude that the Public Guardian's office did know about the Lake County property but did not prioritize marshaling it. To be sure, the Public Guardian should have marshaled this asset. The Court finds that the Public Guardian did not use ordinary care and diligence when it limited its real property search to Napa County only and did not follow up when it learned about this property from Mr. Terrill. Had it run a property search throughout California, presumably the Lake County property would have shown up.

That said, there was no evidence presented at the hearing that Mr. Leon Schmidt's estate has been harmed by this failure. The siblings' argument that the Lake County property could have been sold to

generate cash, presumably instead of the TD Ameritrade Account, is entirely speculative and something that would have taken months, even in the best of circumstances. Furthermore, the Lake County property is now managed by Mr. Gary Schmidt and Ms. Adams in their capacity as the personal administrators of Mr. Leon Schmidt's estate and there is no evidence before the Court that it has diminished in value over the past four years.

Accordingly, the Court finds no harm or loss to Mr. Leon Schmidt's estate and therefore, surcharge is not appropriate.

## CARE CREDIT

From the evidence presented, the Court concludes that the Care Credit "credit card" was a financing plan that Mr. Leon Schmidt signed up for so that he could pay his dogs' vet bills over time. Rebecca Brockman testified that Mr. Leon Schmidt told her about the Care Credit bill, but never gave her a copy of it, despite her repeated requests. She also testified that Mr. Leon Schmidt knew she was not paying it because he had not given her the bill, even though she brought it up many times with him. Ms. Brockman admitted that eventually she reached out directly to the Care Credit company to obtain copies of the bills.

It was undisputed that the Public Guardian gave Mr. Leon Schmidt $50/month to go toward the Care Credit debt. It was also undisputed that, at some point, the Care Credit minimum payments were not made and, presumably, Mr. Leon Schmidt could no longer charge the vet bills on the account. It is clear that Mr. Leon Schmidt was upset by this but what is unclear is whether the vet refused to treat Mr. Leon Schmidt's dogs after this happened - as no evidence was introduced to this effect. Instead, there was evidence that Brad Terrill continued to pay the vet bills.

The Court finds that the Public Guardian should not have assumed that Mr. Leon Schmidt would pay his Care Credit bill with the $50/month it gave him. The Court put the conservatorship in place because Mr. Leon Schmidt had demonstrated an inability to manage his finances and stay on top of his debts - to think he could pay a Care Credit bill by purchasing a money order and mailing the money order to the credit card company, is unrealistic.

However, there is no evidence of any financial consequences as a result of this failure. Moreover, Mr. Leon Schmidt, whether intentionally or otherwise, was thwarting the Public Guardian's attempt to

take overpaying all of his bills by intercepting the mail - even with the forwarding order in place. Under the circumstances, to surcharge the Public Guardian would be inequitable.

## THE ACCOUNTING ITSELF

### Standard v. Simplified Accounting

There are two types of accountings that are available to conservators. A standard accounting lists receipts and disbursements in subject-matter categories, with each receipt and disbursement category subtotaled. A simplified accounting lists receipts and disbursements chronologically, by receipt or payment date, without subject-matter categories. Cal Rules of Ct 7.575(a).

Here, the Public Guardian prepared a Standard Accounting, not a simplified accounting. This is due to the fact that the Conservator lists the receipts in disbursements by subject-matter categories, not chronologically.

In the Court's opinion, the confusion arose from the Public Guardian's use of the "simplified - GC-405 forms" for Schedules A and C. The Court notes that the standard GC 400 forms for Schedules A and C are not mandatory. The Court has compared the forms and they are almost identical, except the standard forms have many subsets, whereas the simplified do not. There is no practical difference between the sets and the Court finds the Public Guardian has fulfilled its obligation to prepare a Standard Accounting.

### Back-up Documentation

The siblings next complain that the Public Guardian should have attached copies of Mr. Leon Schmidt's TD Ameritrade account statements (at least the beginning and final statements) as required by PC 2620(c)(2) and CRC 7.575(b). The Court agrees. These rules require financial statements of outside accounts to be attached to the accounting. The exception allowed by PC 2620 (c)(5) applies only to pooled monies held by Public Guardian.

This issue can be remedied by an amended accounting.

### Lack of Clarity of The Accounting

In addition to the lack of financial statements, and resulting confusion, the siblings complain that the accounting is unclear and confusing in its use of Account Number in the Check No. category, breakdown of cash payments to Mr. Leon Schmidt in multiple different categories and because the

1  Probate Referee's valuation of the TD Ameritrade account did not deduct for the margin loan.

2  As to the first two issues, as the Public Guardian explained, it uses a computer system designed to account for all Conservatorship expenses and is obligated to use most of the judicial counsel forms in its accounting. It is also required, in a standard accounting, to organize expenses in various categories. The Court finds the accounting does just that and while it may not be the most user-friendly format, it complies with the Code.

As to the probate referee's valuation of the TD Ameritrade Account - the probate referee is a neutral third party tasked by the State of California to provide the market value of the assets not valued by the Conservator. PC 8940. The market value of an asset is not reduced by any mortgages or liens. The siblings have provided the Court no authority to the contrary, nor has the Court been able to locate any. The pay-off of a mortgage, or in this case margin loan, should be addressed in the body of the petition for approval of the accounting.

## ATTORNEYS FEES, PUBLIC GUARDIAN FEES, BOND FEES, AND COURT INVESTIGATOR FEES

Of these fees, the siblings take issue with the requested Public Guardian fees. Here, those fees total $11,514.37. The bulk of the fees, $9,059.22 are allocated to 93.5 hours of Ms. Brockman's time. While the Court understand the siblings' frustration with the Conservatorship, it is clear to the Court that Ms. Brockman spent a significant amount of time with Mr. Leon Schmidt - even going to far as to drive by his home to check on him when she was in the area and tracking him down at Jack-in-the-Box on a particularly cold and rainy night. The Court approves the Public Guardian's fees. However, no additional fees should be charged to the Conservatorship for the work required to prepare the amended accounting or for the hearings challenging the accounting.

The Court awards the bond, investigator, and attorneys' fee.

## CONCLUSION

1. The Court finds no breach of fiduciary duty and waives the Public Guardian's requirement to notify Mr. Schmidt's siblings, pursuant to Probate Code Section 1822 (a);

///

///

2. The Public Guardian is ordered to prepare and file a Second Amended First and Final Accounting with the changes/clarifications below with these changes, the Court will approve the accounting and order the Public Guardian to release the remaining funds to Mr. Leon Schmidt's estate:
   - For the period 6/30/24 - 8/27/24. Check the Final Box (not interim)
   - For the accounting period 7/23/23 - 6/29/24
   - Attach the Bank of the West statement for the period including 7/23/23 as well as the closing statement.
   - Attach the TD Ameritrade Statement for the period 7/1/23 - 7/31/23 as well as the closing statement.
   - Social security numbers shall be redacted, and Public Guardian may file these documents as Confidential, if appropriate. See PC 2620(c)(6).
   - In the body of the Petition, add a paragraph explaining the $203,316.02 "Loss" shown on the Summary of Account for the 7/20/23-6/29/24 period;
3. The Court finds no evidence that the Public Guardian somehow defrauded Mr. Leon Schmidt into the Conservatorship;
4. The Public Guardian did not breach its fiduciary duty by liquidating Mr. Leon Schmidt's TD Ameritrade Account;
5. The Public Guardian did not use ordinary care when it failed to marshall Mr. Schmidt's Lake County Property but concludes his estate was not harmed by this failure;
6. The Public Guardian is ordered to pay itself fees in the amount of $11,514.37;
7. The Public Guardian is ordered to pay County Counsel Fees in the amount of $385.00;
8. The Public Guardian is ordered to pay the County Bond Fees in the amount of $1,475.28;
9. The Conservator is directed to pay the Napa Court the sum of $300, as reimbursement for its court investigation cost (Probate Code 1851.5);
10. The property of the estate, after payment of these sums, shall be delivered to the Administrator of the Estate once Letters have been issued. On filing an Ex Parte Petition for

///

Final Discharge and Order, the Napa County Public Guardian shall be discharged as Conservator of the Estate of the Conservatee; and

11. The Court orders the exhibits be returned to the offering Parties.

IT IS SO ORDERED.

DATED: 6/6/25

_____
JUDGE OF THE SUPERIOR COURT

APPROVED AS TO FORM:

DATED: _____          DATED: _____

_____    _____
GARY SCHMIDT               CAROL ADAMS

DATED: _____          DATED: 5/14/2025

_____    *Cynthia Kairys*
SHERRY FIHN                CYNTHIA KAIRYS, Public Defender's Office