**Barry Melton, Esq. (SBN 104700)**
P.O. Box 116
Petaluma, CA 94953-0116
Telephone: (530) 304-9192
Email: *thefish@counterculture.net*

**Luke Busby, Esq. (Nevada SBN 10319)**
316 California Avenue
Reno, NV 89509
Telephone: (775) 453-0112
Email: *luke@lukeandrewbusbyltd.com*
*Admitted Pro Hac Vice*

**Michael S. Biggs, Esq. (SBN 237640)**
Biggs Law Office
319 Lennon Lane
Walnut Creek, CA 94598
Telephone: (925) 933-1300
Email: *michaelbiggs@biggslawoffice-apc.com*

Attorneys for Plaintiffs,

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE ESTATE OF LEON SCHMIDT, through CO-ADMINISTRATORS GARY SCHMIDT, an individual, CAROL ADAMS, an individual, AND SHERI FIHN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF AMERICAN CANYON, THE COUNTY OF NAPA, JOSEPH CHERRY, individually, and REBECCA BROCKMAN, individually, and DOES 2-25, inclusive,<br><br>Defendants. | **CASE NO.: 3:25-cv-06731-MMC**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS THE COUNTY OF NAPA, JOSEPH CHERRY, AND REBECCA BROCKMAN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: February 27, 2026<br>Time: 9:00 a.m.<br>Location: 7<br><br>Judge: HON. MAXINE M. CHESNEY |

**TABLE OF CONTENTS AND TABLE OF AUTHORITIES FOR PLAINTIFFS' OPPOSITION TO DEFENDANTS THE COUNTY OF NAPA, JOSEPH CHERRY, AND REBECCA BROCKMAN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**


| | | Page Number |
|---|---|---|
| | **TABLE OF CONTENTS** | **i.** |
| | **TABLE OF AUTHORITIES** | **ii.** |
| **I.** | **INTRODUCTION** | **1** |
| **II.** | **FACTUAL BACKGROUND** | **1** |
| **III.** | **STANDARD OF REVIEW** | **1** |
| **IV.** | **ARGUMENT** | **2** |
| 1. | Plaintiffs' Claims Are Not Barred by Collateral Estoppel | **2** |
| A. | The Issue Decided in the Probate Proceeding Is Not Identical to Those Presented Here | **5** |
| B. | The Issues Were Not Actually Litigated in the Prior Proceeding | **8** |
| C. | The Issued Were Not Necessarily Decided in the Prior Proceeding | **8** |
| D. | The Prior Decision Was Final and, On the Merits, But only for Purposes of Accounting of the Conservatorship | **9** |
| E. | The Party Requirement Is Not Satisfied, But This Does Not Salvage the Other Deficiencies | **9** |
| 2. | Plaintiffs Have Adequately Pled Their Substantive Due Process Claim | **9** |
| 3. | Plaintiffs Have Adequately Pled Their Elder Abuse Claim | **11** |
| 4. | Plaintiffs Have Adequately Pled Their Wrongful Death Claim | **12** |
| 5. | Plaintiffs Have Adequately Pled Their Breach of Fiduciary Duty Claim | **14** |
| 6. | Plaintiffs Have Adequately Pled Their Procedural Due Process Claim | **15** |
| 7. | If the Court is inclined to grant the Motion, Plaintiff's request Leave to Amend | **17** |
| **V.** | **CONCLUSION** | **18** |
| | Certificate of Service | **19** |

## TABLE OF AUTHORITIES


| | Page Number |
|---|---|
| **Decisions** | |
| *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) | **1** |
| *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998) | **1** |
| *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) | **2, 15** |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007 | **2** |
| *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925, 64 F. App'x 60, 61 (9th Cir. 2003) | **2** |
| *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002) | **2** |
| *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995.) | **3** |
| *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) | **3** |
| *Lucido v. Superior Court*, 51 Cal. 3d 335, 795 P.2d 1223, 1225, 272 Cal. Rptr. 767 (Cal. 1990) | **3** |
| *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) | **3** |
| *Sangha v. Schrader,* 644 B.R. 843, 859 (Bankr. C.D. Cal. 2022) | **4, 5** |
| *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 835, 88 Cal. Rptr. 2d 366, 982 P.2d 229 (Cal. 1999) | **4, 5** |
| *US v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) | **4** |
| *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 181 | **6** |
| Edward W., supra, 99 Cal.App.4th at p. 529, 122 Cal.Rptr.2d 1. | **7** |

| | |
|---|---|
| *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) | **10** |
| *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) | **10** |
| Lewis, 523 U.S. at 846 | **10** |
| *Greer v. City of Hayward*, 229 F. Supp. 3d 1091, 1108 (N.D. Cal. 2017) | **10** |
| Porter, 546 F.3d at 1137 | **10** |
| *Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) | **10** |
| *A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) | **10** |
| Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir.2010) | **10** |
| *Sommers v. City of Santa Clara*, 516 F. Supp. 3d 967, 985-86 (N.D. Cal. 2021) | **10** |
| *Novak v. Continental Tire North America* (2018) 22 Cal.App.5th 189, 195 [231 Cal.Rptr.3d 324] | **12** |
| *Gray v. JPMorgan Chase Bank, N.A.*, 661 F. Supp. 3d 991, 995 (C.D. Cal. 2023) | **13** |
| *Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1083, 224 Cal. Rptr. 3d 846, 404 P.3d 1196 (2017) | **13** |
| *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011) | **14** |
| *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 470-71 (B.A.P. 9th Cir. 2015) | **14** |
| *Garza v. Woods,* 150 F.4th 1118, 1127 (9th Cir. 2025) | **15** |
| *Reed v. Goertz*, 598 U.S. 230, 236, 143 S. Ct. 955, 215 L. Ed. 2d 218 (2023) | **15** |
| *Soranno's Gasco v. Morgan*, 874 F.2d 1310, 1317 (9th Cir. 1989). | **16** |

| | |
|---|---|
| *Mathews v. Eldridge*, 424 U.S. 319 (1976) | **16** |
| *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984) | **17** |
| *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) | **17** |
| *Eldridge v. Block*, 832 F.2d 1132, 9 Fed. R. Serv. 3d 616 (9th Cir. 1987) | **17** |


**Statutes and Rules**


| | |
|---|---|
| Rule 12 of the Federal Rules of Civil Procedure | **1** |
| FRCP 12(b)(6) | **1, 4** |
| 28 U.S.C. §1367(a) | **2** |
| 42 U.S.C. § 1983 | **2, 5** |
| 28 USCS § 1738 | **3** |
| Probate Code § 1822(a) | **4, 6, 7, 9, 16** |
| Probate Code Section 1822(b) | **4, 16** |
| FRCP 56 | **5** |
| FRCP 56(d)(2) | **5** |
| Welfare and Institutions Code §§ 15600 et seq. | **6, 11** |
| Code of Civil Procedure § 377.60 | **6** |
| Welfare and Institutions Code § 15610.57 | **11** |
| Probate Code § 1822 | **13, 14, 16** |
| California Probate Code §§ 2101 et seq. | **14** |
| Fed. R. Civ. P. 15(a)(2) | **17** |

## I. INTRODUCTION

Plaintiffs, THE ESTATE OF LEON SCHMIDT, through CO-ADMINISTRATORS GARY SCHMIDT and CAROL ADAMS, GARY SCHMIDT, an individual, CAROL ADAMS, an individual, AND SHERI FIHN, an individual (collectively "Plaintiffs"), by and through the undersigned counsel, pursuant to Rule 12 of the Federal Rules of Civil Procedure, and hereby respectfully submit this Opposition to Defendants THE COUNTY OF NAPA (hereinafter "Napa"), JOSEPH CHERRY (hereinafter "Cherry"), and REBECCA BROCKMAN's (hereinafter "Brockman") December 16, 2025 Motion to Dismiss (ECF No. 42).

## II. FACTUAL BACKGROUND

This case arises from the tragic death of Leon Schmidt, an 84-year-old man who died on June 29, 2024, after being wrongfully placed under a conservatorship by Defendants. The Plaintiff's First Amended Complaint makes the following claims at issue in the Defendants' Motion: a 14th Amendment Substantive Due Process violation claim against Cherry and Brockman, an elder abuse claim against all Defendants, a wrongful death claim against Napa, Cherry, and Brockman, a breach of fiduciary duty claim against Napa, Cherry, and Brockman, and a 14th Amendment procedural due process claim Napa, Cherry, and Brockman (ECF No. 14).

## III. STANDARD OF REVIEW

When considering a motion to dismiss under FRCP 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys*., 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

28 U.S.C. §1367(a) allows the federal court to exercise supplemental jurisdiction over a plaintiff's claims arising out of state law where such claims form part of the same case or controversy as do the federal questions at issue. Supplemental jurisdiction over a pendent party is constitutional so long as the pendent state law claims are part of the same case or controversy as the federal claims. *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925, 64 F. App'x 60, 61 (9th Cir. 2003) quoting *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002).

## IV. ARGUMENT

### 1. Plaintiffs' Claims Are Not Barred by Collateral Estoppel

County Defendants' Motion seeks dismissal of all claims in the First Amended Complaint on the basis of collateral estoppel, asserting that the issues raised therein were adjudicated in their favor in the probate proceeding. However, the Motion does not explain how preclusion of any specific factual findings from the probate order would defeat each of Plaintiffs' distinct claims, including the federal constitutional violations under 42 U.S.C. § 1983 for substantive due process (Second Cause of Action) and procedural due process (Seventh Cause of Action), as well as the state claims for elder abuse (Third Cause of Action), negligence/wrongful death (Fourth Cause of Action), and breach of fiduciary duty (Fifth Cause of Action). Even assuming arguendo that

collateral estoppel would apply to certain factual issues from the probate order—such as the handling of notice, asset management, or accounting—the Motion provides no persuasive analysis of the elements of the Plaintiffs' claims demonstrating that those decided issues are dispositive. The Plaintiffs allege, generally, that County Defendants' actions and omissions under color of state law caused Schmidt's death by depriving him of adequate funds to care for himself, failing to provide safeguards in the conservatorship process, and contributing to his neglect and ultimate demise. Without such analysis, the Motion cannot establish that the entire First Amended Complaint is barred.

Federal Courts, when determining the effect of a state court decision, apply the collateral estoppel principles of the state in which the judgment was rendered, as required by the federal Full Faith and Credit Statute, 28 USCS § 1738, which mandates that state judicial proceedings be given the same preclusive effect in federal courts as they would have under the law of the state where the judgment originated. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995.)

Under California law, collateral estoppel (issue preclusion) applies when the following elements are satisfied: (1) the issue decided in the prior action is identical to the issue presented in the subsequent action; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the prior decision was final and on the merits; and (5) the party against whom preclusion is sought was a party to the prior proceeding or in privity with such a party. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) citing *Lucido v. Superior Court*, 51 Cal. 3d 335, 795 P.2d 1223, 1225, 272 Cal. Rptr. 767 (Cal. 1990) (in bank). Defendants cite an incomplete 3-part standard under *Hydranautics v. FilmTec Corp*., 204 F.3d 880, 885 (9th Cir. 2000).

California law also applies exceptions to the doctrine of collateral estoppel in cases "…where the findings were made by a quasi-judicial forum (negating factors (a) and (b)), or where a non-party to the original proceeding seeks to utilize collateral estoppel (negating factor (c)) -- does it appear that public policy considerations would weigh against application of collateral estoppel." *Sangha v. Schrader,* 644 B.R. 843, 859 (Bankr. C.D. Cal. 2022) citing *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 835, 88 Cal. Rptr. 2d 366, 982 P.2d 229 (Cal. 1999).

Exhibit 1 to the Motion is the June 9, 2025 Order After Hearing from the Napa County Superior Court. The prior probate proceeding involved the approval of the Public Guardian's Amended First and Final Accounting for the conservatorship estate of Schmidt, with objections from his siblings (Plaintiffs Gary Schmidt, Carol Adams, and Sheri Fihn) on grounds including lack of notice, fraudulent establishment of the conservatorship, liquidation of a TD Ameritrade account, failure to marshal a Lake County property, allowing "care credit" to lapse, use of simplified accounting, lack of backup documentation, and lack of clarity in the accounting. The Probate Court approved the accounting, awarded fees, and overruled the objections, finding no breach of fiduciary duty by the Public Guardian despite certain acknowledged deficiencies, such as the acknowledged failure to provide notice under Probate Code § 1822(a). There is no dispute that Probate Code Section 1822(a) and (b) plainly requires that notice be provided to family members 15 days before a hearing to establish a guardianship occurs. As alleged in the First Amended complaint, this did not happen. See ECF No. 14 at 20.

The Plaintiffs object to Defendants' request for judicial notice of Exhibit 1 to the Motion. Under *US v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), when ruling on a Rule 12(b)(6) motion and considering matters presented that are outside of the pleadings and not referenced in the

complaint, the court must generally convert the motion to a motion for summary judgment under Rule 56 and give the Plaintiff's the opportunity to respond with matters outside of the pleadings or conduct discovery under Rule 56(d)(2). The Defendants only argue that the Court may take judicial notice of facts outside of the pleadings and if the facts are matters of public record. See Motion at 4. This analysis in incomplete and does not adequately justify the consideration of records outside of the pleadings.

Public policy considerations weigh against applying collateral estoppel to the Probate Court's order. Estopping Plaintiffs here would shield government actors from federal constitutional accountability for deprivations of life, liberty, familial association, and property that proximately caused Schmidt's death, undermining core public interests in deterring official misconduct, safeguarding vulnerable elders from exploitation and neglect, and vindicating constitutional rights—where, as here, the conclusions of law on separate and distinct probate issues negate fair opportunity to litigate entirely different issues while risking unremedied harms to fundamental constitutional rights. *Sangha v. Schrader*, 644 B.R. 843, 859 (Bankr. C.D. Cal. 2022) (citing *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 835 (1999)).

***A. The Issue Decided in the Probate Proceeding Is Not Identical to Those Presented Here***

The first element requires that the issue decided in the prior action be identical to the issue in this action. The issues are not identical. The probate proceeding focused narrowly on approving the conservator's accounting under the Probate Code, evaluating whether the Public Guardian exercised ordinary care and diligence in managing the estate and determining whether surcharge was warranted for any breach of fiduciary duty. *See* Exhibit 1 to the Motion, generally. In contrast, the claims brought before this Court encompass broader constitutional and tort issues, including whether County Defendants' actions violated Decedent and Plaintiffs'

substantive due process rights by conduct shocking to the conscience through deliberate indifference to Schmidt's welfare, leading to his death; whether they committed elder abuse through neglect under Welfare and Institutions Code §§ 15600 et seq.; whether they were negligent in a manner causing wrongful death under Code of Civil Procedure § 377.60; whether they breached fiduciary duties in ways extending beyond mere accounting approval, such as by failing to provide adequate safeguards to protect Schmidt's health; and whether the procedural due process rights of the Plaintiffs were violated through lack of prior notice of the conservatorship. As noted in the Probate Court's order, the Plaintiffs appeared *pro per* in that proceeding. Exhibit 1 to the Motion at 4.

On the notice issue, the Probate Court actually found that the Defendants failed to provide notice to family members as required by Probate Code §1822(a) but ruled that this did not constitute a breach of fiduciary duty given the circumstances, due to Schmidt's request not to inform his family due to embarrassment and the court's determination that notice would not have changed the outcome.

> PC 1822(a) requires the Public Guardian to notify the siblings of the Petition. The Public Guardian admits that it failed to do so. Section 1822 provides no sanction or other remedy for the failure, so the Court considers whether the failure to notify is a breach of the Public Guardian's fiduciary duty. Under the facts presented and in light of the totality of the circumstances, the Court finds no breach of fiduciary duty and waives the requirement to notify Mr. Schmidt's siblings.

Exhibit 1 to the Motion at Page 8.

The Probate Court waived the notice requirement's application retrospectively. *Id.* at 8. However, California law required a waiver before the conservatorship was established with a restrictive and specific good cause requirement to protect due process rights. *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 181:

" ' "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.]" ' [Citations.]" (Edward W., supra, 99 Cal.App.4th at p. 529, 122 Cal.Rptr.2d 1.)

This issue is not identical to the procedural due process claim before this Court, which alleges a federal constitutional violation under the Fourteenth Amendment for depriving Schmidt and also his heirs of property and liberty interests without adequate process, including the failure to provide the statutorily mandated 15-day notice before the conservatorship hearing. The Probate Court's waiver and no-breach finding addressed state probate standards for fiduciary duty and surcharge in an accounting context for Schmidt's conservatorship, not the constitutional adequacy of due process under the Constitution to the Plaintiffs. *Id.* Similarly, the Probate Court's legal conclusion of approval of asset handling pertained to whether those actions met probate standards, not whether they amounted to or contributed to elder abuse or wrongful death. Because the issues are not "identical," as required, collateral estoppel does not apply and the Plaintiff's claims are not precluded.

The Probate Court's decision on the issues in the underlying conservatorship accounting proceeding actually bolsters Plaintiffs' claims rather than precluding them, as it expressly found that the Defendants failed to provide the statutorily mandated notice to Decedent Schmidt's siblings under Probate Code § 1822(a), a fact that directly supports the procedural due process violation claim alleged in the First Amended Complaint, where Defendants deprived Decedent and his heirs of property and liberty interests without the required pre-hearing notice. While the Probate Court retrospectively waived this notice requirement in the limited context of evaluating breach of fiduciary duty for surcharge purposes during the accounting approval—citing circumstances like Decedent's embarrassment and the court's belief that notice would not have

altered the conservatorship outcome—it lacked any authority to simply waive a statutory requirement for notice as to Plaintiffs' independent and separate federal due process rights under the Fourteenth Amendment, which protect their own interests in challenging the conservatorship's establishment in the first instance, interests that extend beyond state conservatorship standards and remain unadjudicated on the Constitutional and other state law grounds plead in the First Amended Complaint.

***B. The Issues Were Not Actually Litigated in the Prior Proceeding***

Similarly, the second element requires that the issue was actually litigated in the prior proceeding. While the objectors (Plaintiffs here) raised issues like notice failure and asset mismanagement in their objections to the accounting, the probate proceeding was limited to an evidentiary hearing, not a full adversarial jury trial on the constitutional claims or tort claims alleged here. The Plaintiffs appeared *pro per* and the focus was not on litigating Plaintiffs individual and separate due process or causation for death. For instance, the notice issue was addressed but not contested as a standalone constitutional violation; it was subsumed into the fiduciary duty analysis by the Probate Court. Issues like due process or elder abuse were not raised or litigated at all, and they could not have been, because the Plaintiffs were not making, and could not make, independent claims for relief in the probate proceeding, but rhatehr where asserting objections to the accounting. Thus, the broader issues here were not actually litigated before the Probate Court as the entire purpose of the probate proceeding was to determine the accounting for the conservatorship. See Exhibit 1 to the Motion.

***C. The Issues in this Case Were Not Necessarily Decided in the Prior Proceeding***

The third element requires that the issue was necessarily decided in the prior proceeding. Even where findings were made, they were not necessarily decided in a manner that relates to the

Plaintiffs claims here. For example, the Probate Court's conclusion of law on notice—that the failure did not breach fiduciary duty and could be waived—was contextual to evaluating good faith under probate standards. Again, the finding of fact on the issue was that the statutory notice under Probate Code § 1822(a) was not provided. As argued above, the Probate Court's findings were not intended to resolve constitutional due process or tort claims not before the Probate Court. Because the Probate Court's findings were not essential to the judgment and not decided in a manner that would prove or disprove any element of the claims brought by Plaintiffs, they lack preclusive effect.

***D. The Prior Decision Was Final and, On the Merits, But only for Purposes of Accounting of the Conservatorship***

The fourth element requires a final decision on the merits. The probate order of June 9, 2025, approving the accounting after hearing is final and on the merits for probate and conservatorship purposes. But as detailed above, this does not establish collateral estoppel given the lack of identical issues, actual litigation, and necessary decision.

***E. The Party Requirement Is Not Satisfied, But This Does Not Salvage the Other Deficiencies***

The fifth element requires that the party against whom preclusion is sought was a party to the prior proceeding or in privity. Plaintiffs Gary Schmidt, Carol Adams, and Sheri Fihn were the objectors in the probate proceeding and are parties here.

**2. Plaintiffs Have Adequately Pled Their Substantive Due Process Claim**

County Defendants argue that Plaintiffs have failed to state a substantive due process claim because they have not alleged conduct that "shocks the conscience." This argument ignores the detailed factual allegations in the FAC that, when taken as true, clearly establish conscience-shocking conduct.

> The Fourteenth Amendment's substantive due process clause protects against "government power arbitrarily and oppressively exercised." *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). "The Supreme Court has made it clear ... that only official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting Lewis, 523 U.S. at 846). "The relevant question ... is whether the shocks the conscience standard is met by showing ...deliberate indifference or requires a more demanding showing [of] a purpose to harm [decedent] for reasons unrelated to legitimate law enforcement objectives." *Greer v. City of Hayward*, 229 F. Supp. 3d 1091, 1108 (N.D. Cal. 2017) (quoting Porter, 546 F.3d at 1137). Evidence of ulterior motive or bad intent is not required to satisfy the purpose to harm standard. *Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019). "The lower 'deliberate indifference' standard applies to circumstances where 'actual deliberation is practical.'" *A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) (quoting Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir.2010)).

*Sommers v. City of Santa Clara*, 516 F. Supp. 3d 967, 985-86 (N.D. Cal. 2021)

The allegations in the First Amended Complaint establish the elements of a Fourteenth Amendment substantive due process "shocks the conscience" claim by alleging government conduct that was arbitrarily and oppressively exercised through deliberate indifference to Leon Schmidt's known vulnerabilities, where actual deliberation was practical over the prolonged course of code enforcement, property abatement, and conservatorship proceedings. Under the conservatorship managed by Napa County defendants, they neglected required notice to family members, provided only a token $1,200 annual allowance from his resources while controlling his estate, left him homeless living in his car, reliant on charity and dumpster diving for sustenance, and failed to provide meaningful medical care despite his kidney failure, resulting in malnutrition, exposure, untreated illness, and his death on June 29, 2024, all while maintaining complete control over his finances since the conservatorship was established. (¶89-106). Such extended, deliberate disregard for his basic human needs—shelter, nutrition, and healthcare—while exercising complete authority over his property through conservatorship, absent any split-second exigency and instead reflecting opportunities for reflection and alternative protective

measures, rises to the level of deliberate indifference that shocks the conscience under the applicable 14th Amendment standard.

**3. Plaintiffs Have Adequately Pled Their Elder Abuse Claim**

County Defendants argue that they cannot be liable for elder abuse because they only had a conservatorship over Schmidt's estate, not his person. The First Amended Complaint sets forth a claim for elder abuse under California's Welfare and Institutions Code §§ 15600 et seq. The Napa County Defendants—particularly the County, Joseph Cherry, and Rebecca Brockman as Deputy Public Guardian—established a substantial caretaking or custodial relationship over Schmidt through the conservatorship of his estate, which imposed ongoing responsibility for his basic needs given his known diminished mental capacity, post-2021 fire homelessness, and vulnerability.

The allegations in ¶67–70 of the First Amended Complaint strongly support the existence of a substantial caretaking or custodial relationship under Welfare and Institutions Code § 15610.57 for purposes of the elder neglect claim, even though the conservatorship was formally limited to Schmidt's estate rather than his person. The Petition for Appointment of Probate Conservator, filed by or on behalf of the Napa County Defendants on June 15, 2023, explicitly checked the boxes asserting that Leon was "unable to properly provide for his... personal needs for physical health, food, clothing, or shelter" (¶68, checkbox 5(c)(1)) and "substantially unable to manage his... financial resources or to resist fraud or undue influence" (¶68, checkbox 5(c)(2)). It further stated in an attachment that "the conservatee is unable to understand what a conservatorship is" (¶69), thereby acknowledging his profound incapacity and dependency for basic personal needs that a competent adult would manage independently. These assertions in the petition itself demonstrate that the Defendants sought—and obtained—court authority precisely

because Schmidt could not handle essential aspects of daily living without assistance, creating a fiduciary and custodial-like duty on the part of the appointed conservators to step in where he could not.

Although the Defendants pursued only estate conservatorship and not personal conservatorship (¶70), the petition's own language as described in the First Amended Complaint bridges this distinction by tying financial control to the inability to meet personal needs for health, food, clothing, and shelter—needs that the conservators were positioned to address through allocation of Schmidt’s resources. Combined with Defendants' awareness of Schmidt's diminished capacity his post-fire vulnerability (sleeping in a car/trailer, ¶46), and their assumption of control over his finances amid that dependency (¶¶128), these facts allege a "robust" caretaking relationship, where the Defendants assumed significant responsibility for attending to basic needs Schmidt could no longer manage.

**4. Plaintiffs Have Adequately Pled Their Wrongful Death Claim**

County Defendants argue that Plaintiffs have failed to state a claim for wrongful death because they have not alleged facts showing that Defendants owed a duty of care to Leon Schmidt or that their actions caused his death, and that Defendants owned Leon Schmidt no duty of care. This argument ignores the detailed factual allegations in the FAC.

In any action for wrongful death resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence.” *Novak v. Continental Tire North America* (2018) 22 Cal.App.5th 189, 195 [231 Cal.Rptr.3d 324]. Under California law, negligence is simply the failure to use reasonable care to prevent harm to oneself or to others. “The elements of a negligence claim under California law are duty, breach, causation, and injury.”

*Gray v. JPMorgan Chase Bank, N.A.*, 661 F. Supp. 3d 991, 995 (C.D. Cal. 2023) citing *Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1083, 224 Cal. Rptr. 3d 846, 404 P.3d 1196 (2017).

The Plaintiffs expressly allege that, upon appointment as conservator of Leon Schmidt's estate on July 24, 2023 (¶¶ 79-80) Defendants Napa County, Joseph Cherry, and Rebecca Brockman "had assumed responsibility for the care, supervision, housing, financial management, and medical treatment of Decedent Leon Schmidt" (¶ 134), thereby voluntarily undertaking a special relationship that imposed at least a duty of ordinary care "to use that degree of care and skill that a reasonably prudent person and/or entity would use given the Defendants' respective role, function, knowledge, training, expertise and skill" in managing conservatees (¶135). This included duties to provide food, shelter, clothing, medical care, and protection from hazards, Defendants' knowledge of Schmidt's diminished mental capacity and failing physical health, homelessness, and need for care, triggered this heightened situational duty of due care commensurate with the risk posed, particularly as public conservators with total control over Lee's finances.

The FAC details multiple breaches of this duty through neglect: (a) failing to provide medical care for diagnosed kidney failure or nephrologist access (¶¶ 94-96); (b) allowing Schmidt to live/sleep in his car without shelter (¶¶ 97, 103, 139(b)); (c) limiting allowance to $1,200/year, insufficient for food/clothing/hygiene, forcing reliance on charity/dumpster diving/public facilities (¶¶ 89-90, 92, 103); (d) failing to notify known siblings despite Probate Code § 1822 mandate, and (e) failing to monitor/protect health amid known decline (¶¶ 98). These acts fell below the prudent conservator standard, constituting "deliberate indifference" (¶¶ 122).

Defendants' breaches proximately caused Schmidt's "precipitously" declining health, "squalor," untreated kidney failure, and death on June 29, 2024 (¶¶ 98-100). Lack of

resources/shelter "hindered his ability to seek adequate medical care" and sleeping upright "contributed substantially" to kidney failure's severity (¶¶ 96-97), and Schmidt's death. The complaint also clearly alleges wrongful death damages (¶140).

**5. Plaintiffs Have Adequately Pled Their Breach of Fiduciary Duty Claim**

County Defendants' argument that Plaintiffs have failed to state a claim for breach of fiduciary duty under California Probate Code §§ 2101 et seq. fails as a matter of law, as the Plaintiffs plainly allege facts establishing all elements: (1) existence of a fiduciary relationship; (2) breach of fiduciary duties; and (3) resulting damages. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011); *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 470-71 (B.A.P. 9th Cir. 2015).

The FAC expressly alleges that Defendants Joseph Cherry and Rebecca Brockman, as Napa County Public Guardian employees appointed as conservator of Leon Schmidt's estate on July 24, 2023 (¶¶79-80) owed Schmidt "the highest duties of loyalty, care, good faith, and honesty" as fiduciaries under Probate Code § 2101 et seq. (¶¶ 144-145). This included duties to act solely in his best interests, prudently manage his estate and personal affairs. Napa County is vicariously liable as their employer/principal (¶¶ 12, 16).

Defendants breached these duties through deliberate indifference and recklessness, despite having total control over Lee's finances besides a $1,200 annual allowance (¶¶ 84, 89) Specific breaches include: (a) failing to ensure medical care for kidney failure/nephrologist access (¶¶ 94-96); (b) allowing Schmidt to live/sleep in his car without shelter (¶¶ 97); (c) providing insufficient $1,200/year allowance forcing charity/dumpster diving/public facilities, violating prudent financial management under (¶¶ 90, 92, 103); (d) deliberately failing to notify known siblings/relatives despite Prob. Code § 1822 and awareness of their existence; and (e) neglecting

to monitor/address physical/mental decline (¶146(e)). These acts prioritized debt recovery/city interests over Schmidt's needs (¶¶ 65-66 alleging that the purpose of the conservatorship was debt collection), despite Schmit's known "diminished mental capacity" (¶¶ 70) and estate assets like the 1.2-acre Property enabling reallocation for care (¶¶ 29, 106).

Breaches proximately caused Schmidt's "physical and mental deterioration, pain, suffering, anguish, inadequate living conditions, untreated medical needs," and "wrongful death from kidney failure" (¶¶ 98-100, 105), as well as Plaintiffs' losses as estate/heirs including "familial relationship, companionship, love, affection, solace, moral support, economic losses, funeral and burial expenses" (¶¶107-109)

Defendants' demand in the Motion for granular details on available funds and alternative allocations raises factual disputes improper for resolution at the motion to dismiss stage, where the Court must accept all well-pled allegations—including Schmidt's substantial estate resources (¶106), Defendants' total financial control (¶84), and prudent reallocation potential (¶85)—as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**6. Plaintiffs Have Adequately Pled Their Procedural Due Process Claim**

County Defendants argue that Plaintiffs have failed to state a procedural due process claim because they have not alleged that post-deprivation remedies were inadequate.

Under the Fourteenth Amendment, a procedural due process claim requires the plaintiff to establish only three elements: (1) a liberty or property interest protected by the Constitution, (2) a deprivation of that interest by the government, and (3) a lack of constitutionally adequate process. *Garza v. Woods,* 150 F.4th 1118, 1127 (9th Cir. 2025) citing *Reed v. Goertz*, 598 U.S. 230, 236, 143 S. Ct. 955, 215 L. Ed. 2d 218 (2023). Generally, post-deprivation remedies are

assessed by their availability, see *Soranno's Gasco v. Morgan*, 874 F.2d 1310, 1317 (9th Cir. 1989).

The Plaintiffs allege Decedent Leon Schmidt possessed fundamental interests in: (a) his life, (¶156(a); (b) liberty in personal autonomy, bodily integrity, freedom from restraint, and adequate care, (¶156(b)); and (c) property in beneficial use/management of his finances/assets, seized and mismanaged (¶156(c)). Plaintiffs independently held liberty interests in familial association/companionship with Schmidt and property interests in inheritance/statutory participation rights under Probate Code §1822 (¶157).

Acting under color of state law as Napa County Public Guardian employees (¶16), Defendants deprived these interests via the July 24, 2023 conservatorship order, which stripped Schmidt's financial control, enabled neglect and caused his death on June 29, 2024.

Defendants deliberately failed to provide statutorily required pre-deprivation notice of the June 15, 2023 petition/hearings to known siblings despite Probate Code §1822(a)-(b) mandate (15 days pre-hearing; ¶¶73-78), proceeding ex parte and depriving all parties of "opportunity to be heard, present evidence, challenge the petition, or advocate for adequate care" (¶158). This created "unconstitutionally high risk of erroneous deprivation" under *Mathews v. Eldridge*, 424 U.S. 319 (1976): profound stakes (¶159(a)); high error risk without family input (¶159(b)); minimal notice burden (¶159(c)). No pleading of post-deprivation inadequacy is required to state a procedural due process claim and Defendants cite none. The post-deprivation remedy analysis makes little sense here, as it applies only to random, unauthorized acts where pre-deprivation process is infeasible (*Soranno's Gasco v. Morgan*, 874 F.2d 1310, 1317 (9th Cir. 1989)). Here, the deprivation arose from an established state procedure (conservatorship petition) where pre-deprivation notice was feasible and legally required (¶158). Post-deprivation remedies like

probate appeals/accountings are facially absurd and futile: Schmidt is dead (¶99), his life/liberty irretrievably lost (¶160), and the harm irreversible by any post-deprivation process.

The case cited by Defendants, *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984), which dealt with what process is required to confiscate property from a prisoner, is clearly inapplicable: "…we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."

***7. If the Court is inclined to grant the Motion, Plaintiff's request Leave to Amend***

Under Rule 15(a)(2), a party may amend its pleading with the opposing party's consent or the court's leave, and, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2)). Allowing Plaintiffs to file an amended complaint would serve justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility. While whether to grant Plaintiff leave to amend is discretionary, the Court should apply Rule 15 to facilitate a decision on the merits, rather than on technicalities. *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Courts should allow amendments to pleadings with extreme liberality. *Eldridge v. Block*, 832 F.2d 1132, 9 Fed. R. Serv. 3d 616 (9th Cir. 1987). According to *Eldridge* the public policy favoring resolution on the merits, "is particularly important in civil rights cases." *Id.* at 1137.

//

//

//

//

## V. CONCLUSION

For the foregoing reasons, County Defendants' Motion to Dismiss should be denied in its entirety. Plaintiffs have adequately pled all of their claims, and those claims are not barred by collateral estoppel. If the Court is inclined to grant the Motion, Plaintiff's request leave to amend.

Respectfully submitted,

Dated: January 23, 2026

/s/ *Luke Busby, Esq.*
Luke Busby, Attorney for Plaintiffs
Estate of Leon Schmidt, et al.

Respectfully submitted,

Dated: January 23, 2026

/s/ *Michael S. Biggs, Esq.*
Michael S. Biggs, Attorney for Plaintiffs
Estate of Leon Schmidt, et al.

## CERTIFICATE OF SERVICE

1. Case Name: The Estate of Leon Schmidt, et al. v. City of American Canyon, et al.

2. Case Number: 3:25-cv-06731-MMC

3. Documents Served: Plaintiffs' Opposition to Motion to Dismiss Plaintiffs' Complaint

4. How was the Document served: via Electronic Service

5. On whom was the Document served:

| | |
|---|---|
| **Danielle K. Lewis, Esq.**<br>**Caroline E. Rogers, Esq.**<br>HAWKINS PARNELL & YOUNG, LLP<br>33 New Montgomery Street, Suite 800<br>San Francisco, CA 94105<br>E-Mail: dlewis@hpylaw.com<br>E-Mail: crogers@hpylaw.com<br>*Attorneys for Defendant, City of American Canyon* | **William E. Camy, Esq.**<br>Porter Scott<br>2180 Harvard Street, Suite 500<br>Sacramento, CA 95815<br>E-Mail: wcamy@porterscott.com<br>*Attorney for Defendants, County of Napa, Joseph Cherry and Rebecca Brockman* |

6. When was the Document served: January 23, 2026

7. Who served the Documents: Sunny Grechko, Certified Paralegal

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 23, 2026

BIGGS LAW OFFICE

*/s/ Sunny Grechko*

Sunny Grechko, Certified Paralegal
319 Lennon Lane
Walnut Creek, CA 94598