United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GARY SCHMIDT, et al.,
Plaintiffs,
v.
COUNTY OF NAPA, et al.,
Defendants.

Case No. 25-cv-06731-MMC

**ORDER GRANTING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**

Before the Court are defendants County of Napa ("County"), Joseph Cherry ("Cherry") and Rebecca Brockman's ("Brockman") (collectively, "County Defendants"), "Motion to Dismiss," filed December 12, 2025, and, defendant City of American Canyon's ("City"), "Motion to Dismiss," filed January 23, 2026, whereby said defendants seek orders dismissing plaintiffs' First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs the Estate of Leon Schmidt, Gary Schmidt, Carol Adams, and Sheri Finn have filed opposition, to which defendants have replied. The Court, having read and considered the papers filed in support of and in opposition to the motions, rules as follows.[1]

**BACKGROUND**

The following factual allegations, which are set forth in plaintiffs' First Amended Complaint ("FAC"), are assumed true for the purposes of the instant motions.

Leon Schmidt (hereinafter, "Decedent") purchased his home, located at "106

---

[1] By Order filed March 20, 2026, the Court took the motions under submission.

United States District Court
Northern District of California

Wilson Way in American Canyon, California in Napa County" (the "Property"), a 1.2-acre lot situated on a cul-de-sac. (See FAC ¶¶ 29-30.) Over the years, Decedent kept on the Property various "recyclable materials" (see id. ¶ 35), "operational and nonoperational [vehicles] parked in the one acre back yard" (see id. ¶ 36), "chickens and goats," as well as on occasion a cow and a couple of horses" (see id. ¶ 38). Starting in the "early 2000s" Decedent received visits "from code enforcement officers from [the City] about storage of materials on his large lot" (see id. ¶ 33) and received "warning notices and citations for the state of the [P]roperty" (see id. ¶ 40).

In 2010, at the approximate age of seventy-one, Decedent suffered a "near fatal heart attack," after which his "mental capacity and facilities began to deteriorate." (See FAC ¶¶ 25, 43-44.) Approximately ten years later, in April 2021, there was a fire on the Property, which destroyed the house and resulted in the death of Decedent's younger brother Steven as well as the death of Decedent's pet dog. (See id. ¶ 45.) After that tragic event, Decedent "spent a lot of time sifting through the ashes" for "salvageable treasures" and "scrap metal"; he "slept either in a camp trailer or in his car at or near the Property." (See id. ¶ 46.)

Although "they had knowledge . . .of [Decedent's] diminished capacity" (see id. ¶ 48), the City's "code enforcement" unit "continued to issue citations to Decedent and, in June 2022, "began the process of filing an action ex parte with the [c]ourt to do a mandatory cleanup/clearing of [the] [P]roperty" (see id. ¶¶ 47-48). In August 2022, the City filed two petitions in Napa County Superior Court, "requesting authority to hire outside contractors and have the Property cleaned/cleared and alleged nuisances abated." (See id. ¶ 52.) Thereafter, in "August and/or September" 2022, the Superior Court issued an order granting the City's petitions (hereinafter, "Abatement Order"). (See id. ¶ 57.)[2] The City billed Decedent "over $200,000 for this cleanup/clearing of the

[2] The City asks the Court to take judicial notice of documents filed in Napa County Superior Court titled In Re Inspection and Abatement at 106 Wilson Way, No. 22CV000850, namely: (1) "Inspection Warrant and Abatement Order," filed July 29, 2022; (2) "Renewal of Inspection Warrant and Abatement Order," filed August 8, 2022; (3)

United States District Court
Northern District of California

Property" (see id. ¶ 61), after which the City "continued to cite [Decedent] for code violations . . . and also began sending threatening foreclosure notices" (see id. ¶ 62).[3]

"In May and June 2023," the City "requested that [the County] petition for conservatorship over [Decedent's] estate (see id. ¶ 64), and, on June 15, 2023, a "Petition for Appointment of Probate Conservator" ("Petition") was filed (see id. ¶ 67), whereby, according to plaintiffs, County Defendants, "despite clear acknowledgement of [Decedent's] diminished mental capacity and recognition of his medical issues. . .[,] sought only control over the estate but not [Decedent's] person" (see id. ¶ 70).

Although required by California law, County Defendants did not give Decedent's siblings notice of the Petition, nor did they otherwise receive such notice (see id. ¶¶ 73, 77), and, on July 24, 2023, an "Order Appointing Probate Conservator" was issued, naming defendant Cherry, Assistant Public Guardian, as "conservator of the estate of [Decedent]" (see id. ¶ 79) and "authoriz[ing] broad independent estate powers per the Probate Code" (see id. ¶ 80).

During the course of the conservatorship, defendant Brockman, who, plaintiffs allege, had "primary responsibility to manage [Decedent's] day to day financial affairs" (see id. ¶ 91), "did little to nothing. . .to provide [Decedent] with adequate food, shelter, and clothing" (see id.) or to help Decedent "obtain[] adequate medical care for treatment of his kidney failure" (see id. ¶ 95), a condition with which he was diagnosed in "January or February 2024, during the course of his conservatorship" (see id. ¶ 94). On June 29, 2024, while in the hospital, Decedent passed away from kidney failure at the age of

---

"Extension Inspection Warrant and Abatement Order," filed September 1, 2022; and (4) "Extension Inspection Warrant and Abatement Order," filed September 16, 2022. (See City's Request for Judicial Notice ("City's RJN"), Doc. No. 49-1, Exs. A-D.) The City's request is hereby GRANTED. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (holding "court may take judicial notice of matters of public record") (internal quotation and citation omitted).

[3] There are no facts alleged in the FAC, or otherwise found in the record, indicating the Property was foreclosed upon or otherwise sold in connection with any action taken by the City or County.

United States District Court
Northern District of California

eighty-three. (See id. ¶¶ 99-100.)

Subsequently, over the course of several days in March and April 2025, the Superior Court conducted a hearing on the Public Guardian's Final Accounting, as to which hearing plaintiffs received notice and participated, making a number of arguments that were not found persuasive by the judge. (See County Defs.' Request for Judicial Notice ("RJN") Ex. A.)[4]

Based on the above-described events, plaintiffs, comprising Decedent's estate[5] and his surviving siblings, assert the following seven Causes of Action: (1) "Violation of Fourth Amendment Rights Under 42 U.S.C. § 1983"; (2) "Substantive Due Process Violation - 14th Amendment under 42 U.S.C. § 1983"; (3) "ELDER ABUSE - WELF. & INST. CODE §§ 15600 et seq."; (4) "NEGLIGENCE - WRONGFUL DEATH - Cal. Code Civ. Proc. § 377.60"; (5) "Breach of Fiduciary Duty - Cal. Prob. Code §§ 2101 et seq."; (6) "Takings Clause Violation - Fifth Amendment under 42 U.S.C. § 1983"; (7) "Procedural Due Process - Fourteenth Amendment under 42 U.S.C. § 1983."

By their instant motion, County Defendants move to dismiss on the dual grounds of collateral estoppel and failure to state a claim. The City moves to dismiss on the sole ground of failure to state a claim. The Court first addresses the issue of collateral estoppel and then addresses each cause of action in the order in which it is asserted in the FAC.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2),

---

[4] County Defendants ask the Court to take judicial notice of the "Order After Hearing," filed June 9, 2025, in Napa County Superior Court in In re Conservatorship of the Est. of: Leon Schmidt, No. 23PR000161. (See id.) County Defendants' request is hereby GRANTED. See Lee, 250 F.3d at 689.

[5] The estate brings its claims through its "Co-Administrators Gary Schmidt and Carol Adams." (See FAC ¶ 7.)

however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a Cause of Action." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

**DISCUSSION**

**A. Collateral Estoppel**

County Defendants contend plaintiffs are collaterally estopped from bringing all seven Causes of Action, citing the Order After Hearing issued by the Superior Court. (See County Defs.' Mot. at 3:8-9).

Under California law, an issue decided in a prior action may not be relitigated in a second action, where (1) "the issue decided in the prior adjudication [was] identical with the one presented in the [second] action," (2) a "final judgment on the merits" was entered in the first action, and (3) "the party against whom the [defense of issue preclusion] is asserted [was] a party or in privity with a party in the prior adjudication." See Bernhard v. Bank of America Nat'l Trust & Savings Ass'n, 19 Cal. 2d 807, 813 (1942). The "party asserting estoppel" has the "burden of pleading and proving the identity of issues." See Hernandez v. City of Los Angeles, 624 F.2d 935, 937 (9th Cir. 1980).

Here, County Defendants have failed to make an adequate showing as to the identity of issues, in that County Defendants have not clearly identified each specific factual finding made by the Superior Court that matches a specific fact alleged by plaintiffs and necessary to the viability of a specific claim. Although County Defendants cite to language in the Superior Court's order that they characterize as findings, they make only general reference to "[p]laintiffs' allegations" in the FAC. (See County Defs.' Mot. at 4:18-5:1). Put another way, they haven't adequately matched up anything. See Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th Cir. 1992) (holding requisite showing must be made "with clarity and certainty").

Accordingly, County Defendants having failed to show any, let alone all, of plaintiffs' seven causes of action are barred by collateral estoppel, the FAC is not subject to dismissal on such ground.

//

//

United States District Court
Northern District of California

**B. Failure to State a Claim**

**1. First Cause of Action**

Plaintiffs First Cause of Action asserts a Fourth Amendment claim against the City based on its employees' allegedly improper "warrantless searches of structures on the Property" as well as the "seiz[ure] and dispos[al]" of valuable items "without legal authority [or] probable cause," and "exceeding the [Abatement Order's] permissible scope." (See FAC ¶ 13.) Plaintiffs allege the City is liable for such conduct "under Monell v. Department of Social Services." (See id. ¶ 114.)

The FAC lacks, however, any allegation as to other incidents of similar conduct or any other facts suggesting such conduct was committed pursuant to a City policy or practice, or was the result of the City's failure to properly train its employees. Rather, plaintiffs do no more than allege the existence of such policies and failure in wholly conclusory fashion. (See FAC ¶ 114); see also, e.g., Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1154 (9th Cir. 2021) (noting "generally, a single instance of unlawful conduct is insufficient to state a claim for municipal liability under section 1983").

Accordingly, the First Cause of Action is subject to dismissal.

**2. Second Cause of Action**

In the Second Cause of Action, plaintiffs assert a Fourteenth Amendment claim against all defendants under the Substantive Due Process Clause, alleging Cherry and Brockman "deprived Decedent . . .of his liberty and property interests" by "failing to notify [his] known siblings. . .of the Petition" (see FAC ¶¶ 119-120) and by their "deliberate indifference to [his] welfare," all of such failures ultimately "leading to his death" and, in turn, his siblings' "loss of familial relationship and economic losses" (see id. ¶¶ 122, 124).

The FAC, however, is devoid of factual allegations sufficient to show defendants "recognize[d] [an] unreasonable risk and actually intend[ed] to expose [Decedent] to such risks without regard to the consequences to [him]." See Herrera v. Los Angeles Unified Sch. Dist., 18 F.4th 1156, 1158-59 (9th Cir. 2021) (internal quotation and citation omitted) (holding defendant "needs to know[ ] that something is going to happen but ignore[s] the

risk and expose[s] [the plaintiff] to it").

Accordingly, the Second Cause of Action is subject to dismissal.

**3. Third Cause of Action**

Plaintiffs' Third Cause of Action asserts a claim of elder abuse against all defendants under § 15600, et. seq. of the California Welfare & Institutions Code and, in particular, § 15610.57, which defines one form of covered conduct as the "negligent failure of any person having the care or custody of an elder. . .to exercise that degree of care that a reasonable person in a like position would exercise." See Cal. Welf. & Inst. Code § 15610.57(a)(1).

As County Defendants point out, however, the Third Cause of Action fails, in that the FAC "concedes that [County] Defendants acted only in connection with a conservatorship of the estate, which relates exclusively to financial management" (see County Defs.' Mot. at 8:5-6) (citing Cal. Prob. Code § 2252), which relationship cannot be "transform[ed]" into a substantial caretaking relationship merely because . . . County Defendants had financial control over Decedent's assets . . . even if coupled with Decedent's vulnerabilities" (see County Defs.' Reply at 6:28-7:3.) In particular, the California Probate Code imposes a duty to seek a conservatorship over the person, thereby creating a caretaking relationship, only where (1) "there is an imminent threat to the person's health or safety" or (2) "the court so orders," see Cal. Prob. Code § 2920, and the FAC does not set forth facts demonstrating either such circumstance existed.

Moreover, to the extent plaintiffs bring the Third Cause of Action against the City, it is subject to dismissal for the additional reason that, as the City points out, "[t]he City. . .is not alleged to have established a conservatorship over Decedent" (see City's Mot. at 10:10-12), and plaintiffs' conclusory allegation that the City "collaborated with the County in pursuing and implementing the conservatorship" (see FAC ¶ 16), even if supported with facts, is insufficient to show the City had either the "care or custody" of Decedent, a requirement of §15610.57, the statute on which plaintiffs' claim is based.

Accordingly, the Third Cause of Action is subject to dismissal.

**4. Fourth Cause of Action**

In the Fourth Cause of Action, plaintiffs assert a wrongful death claim against County Defendants based on said defendants' role in "the administration of a conservatorship over the estate of Decedent" (see FAC ¶ 134) and allegedly negligent failure to provide him with "appropriate medical care," with "safe and adequate housing and shelter," and with "sufficient financial resources for basic needs," as well as their failure "to notify [Decedent's] known relative. . .of the conservatorship proceedings. . ., thereby preventing family intervention," all leading to Decedent's death and his siblings' "economic and non-economic damages" (see FAC ¶¶ 139-40).

As discussed above, however, plaintiffs have failed to plead facts supporting a duty beyond that imposed by a conservatorship of the estate, and, as to the failure to notify, plaintiffs have not pleaded facts sufficient to support their conclusory allegation that "family intervention. . .could have ensured adequate care" and, in turn, prevented Decedent's death.

Accordingly, the Fourth Cause of Action is subject to dismissal.

**5. Fifth Cause of Action**

Plaintiffs' Fifth Cause of Action asserts a claim against County Defendants, "as appointed conservators of the estate of Decedent" (see FAC ¶ 144), alleging said defendants breached their fiduciary duties by essentially the same failures as alleged in support of the Fourth Cause of Action and with the same alleged results. (See id. ¶ 146.)

As discussed earlier herein, however, plaintiffs fail to demonstrate County Defendants owed a duty of care to Decedent as a person. Further, in their Fifth Cause of Action, plaintiffs fail to allege facts sufficient to support their conclusory allegation that any such alleged failure(s) caused harm to Decedent's estate (see id. ¶ 148), the one plaintiff to which County Defendants, as conservator of the estate, owed any duties, and which duties, as discussed above, pertain to the assets of the estate rather than to Decedent as an individual.

Accordingly, the Fifth Cause of Action is subject to dismissal.

United States District Court
Northern District of California

**6. Sixth Cause of Action**

In the Sixth Cause of Action, plaintiffs assert a claim against the City under the Takings Clause of the Fifth Amendment, alleging the City "appropriated and disposed of [Decedent's] personal property, including new merchandise, treasured family heirlooms, and other items stored in structures such as the barn and garage, which were not alleged to be nuisances, cited for violations, or within the scope of the court order authorizing abatement." (See FAC ¶ 151.)

Plaintiffs have not shown, however, how any particular item within any of the above general categories fell outside the broad scope of the Abatement Order, which authorized "the permanent removal of nuisance conditions," and covered the "[a]ccumulation of rubbish and trash," "[b]roken discarded household items," "[h]azardous conditions," "sanitation," "[r]estrictions on storage of vehicles," and "[o]ther evidence of noncompliance with City, County, or State Codes." (See City's RJN Exs A-D.) Nor have plaintiffs shown the search was conducted beyond the authorized premises, which extended to the "Property located at 106 Wilson Way in the City and all appurtenances thereto." (See id. Ex. D at 3:7-8).

Accordingly, the Sixth Cause of Action is subject to dismissal.

**7. Seventh Cause of Action**

In the Seventh Cause of Action, plaintiffs assert a Fourteenth Amendment claim against County Defendants under the Procedural Due Process Clause, alleging said defendants deprived them and Decedent of "protected life, liberty, and property interests" by "fail[ing] to provide [p]laintiffs with any notice of the conservatorship petition, hearings, or subsequent orders," thereby "violat[ing] Probate Code § 1822." (See FAC ¶¶ 155, 158.)

"State law can create a right that the Due Process Clause will protect," however, "only if the state law contains (1) substantive predicates governing official decision making, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." See James v. Rowlands, 606 F.3d

United States District Court
Northern District of California

646, 656 (9th Cir. 2010) (internal quotation and citation omitted); see also id. (explaining "the state law must provide more than merely procedure; it must protect some substantive end") (internal quotation and citation omitted).

California Probate Code § 1822, in relevant part, provides: "At least 15 days before the hearing on the petition for appointment of a conservator, notice of the time and place of the hearing shall be given. . . to . . .[t]he relatives named in the petition at their addresses stated in the petition." Based on the text of said statute, § 1822 "simply require[s] notice," which requirement, without more, is not entitled to due process protection. See James, 606 F.3d at 656-57 (affirming summary judgment in favor of defendant on procedural due process claim where statutes requiring notification did "not establish any substantive predicates or mandate any outcomes").

Accordingly, the Seventh Cause of Action is subject to dismissal.

**CONCLUSION**

For the reasons stated above, defendants' motions to dismiss are hereby GRANTED, and plaintiffs are hereby afforded leave to amend to cure the above-noted deficiencies. Plaintiffs' Second Amended Complaint shall be filed no later than August 17, 2026.

**IT IS SO ORDERED.**

Dated: July 17, 2026

MAXINE M. CHESNEY
United States District Judge